# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 14, 2018       Decided March 15, 2019

No. 18-5105

JEFFREY A. LOVITKY,
APPELLANT

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT
OF THE UNITED STATES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00450)

———

*Jeffrey A. Lovitky* argued the cause and filed the briefs for appellant.

*Matthew J. Glover*, Counsel to the Assistant Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Mark B. Stern* and *Michael Shih*, Attorneys.

Before: TATEL and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  Officers of the United States swear to "faithfully discharge the duties of the[ir] office."  5 U.S.C. § 3331; see also U.S. Const. art. II, § 1, cl. 8 (requiring the President to swear that he "will faithfully execute the Office of the President").  When they fall short, the Mandamus Act offers relief; it vests district courts with jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The question here is whether the Act extends to duties pertaining not to an officer's public office, but to his pre-election (or pre-appointment) acts.  We hold that it does not.

* * *

This case concerns a dispute about a then-presidential candidate's financial disclosure report.  Under the Ethics in Government Act of 1978, candidates for certain offices, including the Presidency, must file financial disclosures with the Federal Election Commission.  5 U.S.C. app. § 103(e).  Subject to some limitations, a presidential candidate's financial disclosure "shall include a full and complete statement with respect to," among other things, the "identity and category of the total liabilities owed to any creditor."  *Id*. § 102(a)(4).

Plaintiff Jeffrey Lovitky, appellant here, alleges that, as a presidential candidate, Donald J. Trump filed a financial disclosure report with the FEC on May 16, 2016.  Compl. ¶ 13, J.A. 11; see J.A. 28–131.  Part 8 of this disclosure listed 16 financial liabilities, identifying each creditor, and describing the nature and terms of each liability.  Compl. ¶ 16, J.A. 12; see

J.A. 84.  The "appropriate reviewing officials" (see generally 5 U.S.C. app. § 106; 5 C.F.R. § 2634.605) determined that candidate Trump's disclosures were "in apparent compliance with the disclosure requirements of the Ethics in Government Act."  Compl. ¶ 13, J.A. 11; see J.A. 28.

Lovitky sees non-compliance.  He alleges that then-candidate Trump's financial disclosure included both personal and business liabilities, Compl. ¶¶ 37–42, J.A. 18–19, and that this violated the Ethics in Government Act, which, Lovitky argues, "requires disclosure of *only* those liabilities for which candidates are themselves liable . . . or for which the spouse or dependent child of the candidate are liable," *id*. ¶ 24, J.A. 15; see also *id*. ¶¶ 43–44, 46, J.A. 19–20.  Candidate Trump, Lovitky contends, "obscured his liabilities by commingling them with the liabilities of business entities."  Appellant's Br. 11.

Lovitky brought suit in the district court for the District of Columbia, seeking "relief in the nature of mandamus, directing [now-President Trump] to amend his financial disclosure report" so that it "specifically identif[ies] any debts [that then-candidate Trump] owed."  Compl. 14, J.A. 21.

On April 10, 2018, the district court dismissed, holding that Lovitky lacked Article III standing because the court could not "issue the relief that [he] request[ed]" and thus could not "redress [his] grievance."  *Lovitky v. Trump*, 308 F. Supp. 3d 250, 260 (D.D.C. 2018).  Lovitky appeals, and we affirm—but on other grounds.

\* \* \*

We begin (and end) with subject-matter jurisdiction, without reaching the question of standing.  See, e.g., *Moms*

*Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("Where both standing and subject matter jurisdiction are at issue . . . a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other."). In his Second Amended Complaint, Lovitky asserts three bases of federal subject-matter jurisdiction: 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (mandamus); and 28 U.S.C. § 2201 (declaratory judgment). Compl. ¶ 3, J.A. 9; see also Appellant's Br. 1.

But § 2201 (declaratory judgment) "is not an independent source of federal jurisdiction." *Metz v. BAE Sys. Tech. Solutions & Servs. Inc.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014) (quoting *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)). And Lovitky makes no effort to challenge the district court's finding, see 308 F. Supp. 3d at 260 n.8, that he abandoned reliance on § 1331 (federal question), thus forfeiting that possible font of jurisdiction for purposes of this appeal, see *DeJesus v. WP Co.*, 841 F.3d 527, 532 n.1 (D.C. Cir. 2016).

This leaves the Mandamus Act, which reads in full:

§ 1361. Action to compel an officer of the United States to perform his duty

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361. Lovitky brings this "action . . . to compel" an individual—namely, President Trump "in his official capacity." See Compl. ¶ 2, J.A. 9. We assume, without deciding, that the President is "an officer" subject to the Mandamus Act and that the alleged obligation—to provide a

"full and complete statement" of liabilities, see, e.g., Compl. ¶ 44, J.A. 20 (quoting 5 U.S.C. app. § 102(a)(4)); Appellant's Br. 35 (same)—is one "owed to the plaintiff." The only question, then, is whether the obligation sued on, see 5 U.S.C. app. § 101(c) (identifying candidates as persons required to file); *id.* § 102(a)(4) (identifying liabilities required to be disclosed), is a "duty" within the meaning of the Mandamus Act.

It is not. Lovitky has challenged only one of Trump's financial disclosure reports—the one filed in May 2016. At that time, Trump's obligation to provide a "full and complete statement" of liabilities arose out of his status as a *candidate* for the office of President, as he had not yet been elected. See 5 U.S.C. app. § 101(c) (imposing reporting obligations on "candidate[s]" for "the office of President . . . other than an incumbent President"). That makes all the difference. As we'll develop below, duties within the meaning of the Mandamus Act include *only* those obligations that pertain to a defendant officer's (or employee's) public office. (Because Lovitky bases his claim on an obligation that was supposedly imposed by § 101(c), see, e.g., Appellant's Supplemental Br. 4, we need not—and do not—express an opinion as to whether other provisions of the Ethics in Government Act impose a "duty" within the meaning of the Mandamus Act.)

True, if read in isolation, the phrase "a duty owed to the plaintiff," 28 U.S.C. § 1361, could—at least in theory—mean any "tasks" that any officer of the United States happens to be "obligat[ed]" to perform—whether by statute, private contract, or (perhaps) even "feeling[s]" of "moral obligation," *Webster's Third New International Dictionary* 705 (1981).

But the context points to a narrower meaning. See, e.g., *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017). Here, "duty" is associated (in the text and title of the

Act) with "officer," see 28 U.S.C. § 1361—that is, one "who performs *the duties of the office*," *Black's Law Dictionary* 977 (5th ed. 1979) (emphasis added); see also *Webster's Third*, *supra*, at 1567 (defining an "office" as "a special duty, charge, or position conferred by an exercise of governmental authority and for a public purpose"). (The word "officer," we note, is itself derived from the Latin word *officium*, meaning "duty." *Id*.). In this context—where a statute links an officer to his "duty"—the most natural reading of "duty" refers only to those duties entailed by the office in question.

The statute's common law background also supports reading it to require that the duty a plaintiff seeks to compel via § 1361 must pertain to a defendant's public office. "It is a settled principle of interpretation that, absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms its uses.'" *Sekhar v. United States*, 570 U.S. 729, 732 (2013) (quoting *Neder v. United States*, 527 U.S. 1, 23 (1999)). By using the terms "action[s] in the nature of mandamus," § 1361 invokes the common-law writ of mandamus. Apart from defendants of no relevance here (i.e., common carriers, corporations, and certain public franchises, see, e.g., S.S. Merrill, *Law of Mandamus* §§ 25–28, at 23–28 (Chicago, T.H. Flood & Co. 1892)), the subjects of mandamus under the common law were persons who owed not just any act, but an act that "*appertain[ed] to their office and duty*." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 745 (D.C. Cir. 1995) (quoting 3 William Blackstone, *Commentaries* *110); accord, e.g., *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 147 (1803) (Marshall, C.J.). The common law writ, in other words, issued "to compel the performance of an act which the law enjoin[ed] as a *duty resulting from an office*, trust or station." Merrill, *supra*, § 13, at 7 (emphasis added), *cited in* Appellant's Supplemental Br. 2 & n.3; accord, e.g., *N. Pac. R.R. Co. v. Washington ex rel. Dustin*, 142 U.S. 492, 506 (1892); see also,

e.g., *Eberle v. King*, 93 P. 748, 753 (Okla. 1908) ("[W]here the writ is sought to be invoked, the proper inquiry is, does the duty sought to be enforced clearly result from an office, trust, or station?"); Merrill, *supra*, § 23, at 20 ("The rule is, that this writ will not . . . lie against an officer for acts done in an unofficial character.").

Detachment of the duty from the office of the defendant would lead to serious incongruities. For example, where an officer is sued in his official capacity, as here, Rule 25(d) of the Federal Rules of Civil Procedure automatically substitutes as defendant the official's successor in office. See, e.g., *Nader v. Saxbe*, 497 F.2d 676, 677 n.1 (D.C. Cir. 1974). Acceptance of Lovitky's theory would thus, in principle, mean that a public official could be compelled to perform the personal financial disclosure duties of his predecessor (and who knows what other duties)—an exceedingly odd result.

In sum, the Mandamus Act applies only to duties that flow from a defendant's public office. And because the alleged duty here—directed at *candidates* for public office—lacks that defining characteristic, the district court had no jurisdiction under that Act over Lovitky's claims.

\* \* \*

For the foregoing reasons, the district court's judgment dismissing the case is affirmed.

*So ordered.*